Our third case this morning is number 16-1875 Greatbatch Ltd. v. AVX Corporation, Mr. Niefeld. May it please the Court, Your Honor. I'm Rick Niefeld, representing Greatbatch. The Board concluded that hazard disclosures... Let me ask you a question so that I can figure out where we are. Let's suppose that, hypothetically, and I know we're going to hear argument about this, that the Board interpreted the hazard reference correctly. Okay, and I know you argue that it didn't. What other issues do we have to decide in this case? None, Your Honor. That's it. Okay, thank you. Go ahead. So, as you know, the Board interpreted the hazard reference, and it's finding that hazard discloses replacing the external ground connection with an internally grounded connection. Replacing or just having? Excuse me? Replacing or having existed? Mr. Galvani testified at 1039 in the appendix, his declaration, ground lead could be terminated at the pin. That was his conclusion from interpreting also to mean instead of. Now, it's clear on 1039 he used the words, relied upon the phrase, the ground can also be that phrase, the second sentence in hazard. That's the phrase he relied upon for the conclusion that hazard discloses the ground can be terminated at the pin. You look at the context in the words there. You'll see he refers to the first sentence, the normally terminated edge, draws the contrast with the word, however, bolds the terms in the first clause in the second sentence, the ground can also be brought to the pin. And then makes a conclusion from that that hazard teaches an alternative. That was the focus of the proceeding below, what that phrase in hazard meant. And Mr. Galvani's testimony, direct testimony, points that out. In cross-examination at appendix pages 2595-96, he admitted that the dictionary definitions for instead are not also and the dictionary definitions for also are not instead. In other words, the words don't have the same meaning. AVX put in its reply, supported by Mr. Primack's declaration, and Mr. Primack also said, quote, dictionary definitions could indicate that also could indicate an alternative. Then he said, various dictionary definitions indicate that also means taking the place of. That's in appendix page 1436. Cross-examination, he admitted that was not the case. The omissions are multiple, but they pair at appendix pages 3888-4004. He admitted that also does not mean an alternative in the English language. That's at 4002-4004. And that the sole dictionary definition he could have relied upon for the conclusion did not indicate that taking the place of in the English language meant was a definition of also. It was, in fact, a description of archaic words. I'm not sure I understand the whole point of this argument. Doesn't hazard show that the ground can go through the pen? Yes, it does. Is your argument that in order for it to be obvious, it has to show that it only goes through the pen and not through the edge? That's a very good point. Hazard discloses the conventional structure of a multilayer structure with capacitors made by pins that go through it. The signal line is normally the pen, but hazard teaches what was well known, that the connection to a pen can be made by running the ground through the edge connection, through the grounded plates to the pen. That's what bringing the ground to the pen means in hazard. Professor Stevenson testified that that was well known in the art prior to hazard. Judge Hughes, the structural difference is either you bring the ground to the pen from the outside through a ground connection. That gives you low inductance. Or you have the pen, and you have the pen terminated by a line coming from somewhere else. Mr. Gildott, he testifies that this phrase is grounded and terminated at the pen. I'm sorry, I'm looking at these two sentences. And maybe I don't understand the technology, but the way these two sentences read to me, it says a common ground connection is normally terminated along the long edges. Yes. That's what you think you improved over, because you terminate through the pen, right? In your patent. Yes, with a ferrule. Right, but this goes on and says, but the ground can also be brought to the pen. Yes, it can. Why doesn't that disclose exactly what you think you improved upon? Because when you bring the ground to the pen, first of all, that's an electrical concept. It says the ground. Ground is a reference potential. Is it because the pen doesn't go all the way through? You're saying there are two ways to bring the ground to the pen. Yes, from the sides. One is from the side, you just loop it in, right? And the other way is to bring it from the outside or some other place. Yes. Outside to the pen, to the tip of the pen. That's a ground lead that connects to the pen. And that's what your patent does. What? That's what your patent does. No. No, the patent has the pen connected to a ferrule where the pen exits the feed-through filter. That's what the board found. That's what an internally grounded pen does. The pen is connected to the bottom metal plate. Yes. That's the one. That's how it grounds. Right. We claim a feed-through filter assembly. That's an internally grounded pen. That's entirely different than a pen having a ground lead connected to it. Because the ground lead goes off to infinity. It goes to the light switch in the airplane, the 5-volt power switch. So the claim refers to a feed-through filter assembly. The board found that that is what's shown in our figures 5 and 10, the assembly. That the internal ground is the pen connecting to the ferrule where the ferrule exits the feed-through filter capacitor. That's necessary to give you the very low inductance that can make the device work. In implantable devices, for example. If you have a line extending like this to the value groove, a lead line, then that's not an internally grounded feed-through filter assembly. That pen is not an internal ground. It's grounded somewhere else by the periphery edge connection. And our patent claims do not include an edge connection. So if you look, for example... But hazard is not internally grounded in your view? Absolutely not. It's not internally grounded. That's the source of the dispute. Whether hazard discloses that there is an internal ground to a pen instead of an edge connection. But I still don't see grammatically how that's possible when it's setting it up as two alternatives. But that's what the second sentence says. It says you can bring it to an internal ground or preferably you go to the edge. The second sentence says the ground can also be brought to the pen. That's a false premise, Your Honor. The false premise is that the ground's antecedent is the connection in sentence one. Sentence one says a common ground connection. Well, that's just grammar. I mean, it's talking about a common ground connection is normally along the edges. The second sentence says, but it can also be brought to the pens. But an edge ground is preferred. I'd like you to look at Mr. Gavagni's other drawing to clarify the point. Please look at appendix page 2389. It's cited in the brief on page 11. Which volume is that? Volume two, Robert. It's volume two. What page? 2389. Yes, 2389. And what are we looking at? Is this hazard? This is the markup of hazard page two by Mr. Gavagni, specifically identifying the elements of figure two. Now you'll see there that it refers to a ground contact in markup element number one of figure four. And you'll see that that ground contact is connected by a line to the schematic, the electrical schematic in element two, which shows the reference potential. Ground is not a common ground connection. Ground's an electrical property. You are equating ground with the connection. I have no idea what you're trying to tell me. I'm trying to tell you that a common ground connection in phrase one, hazard, hazard says a common ground connection is normally terminated at the edge. Okay. Where does this show any of that? A common ground connection is shown by the term ground contact in the original hazard figure right next to element one on the right side and identified by Mr. Gavagni as that which is the contact to the reference potential by his line on the left side connecting that to the schematic. I'll tell you what your problem is. You've got conflicting expert testimony about this. You've got a finding of fact by the board as to what hazard discloses and you've got a problem of showing us that there isn't substantial evidence to show that they were right. I mean, that's your problem. We're not experts that don't purport to be experts in the field. I recognize the burden and I recognize the testimony. I understand it's substantial evidence. That's why I went directly to the word also. The technology is one thing. The words are another. The term common ground connection is a connection. It's kind of clear. It's a connection. I'm pointing out to the figure to tell you it's a connection and show you that. That's what Mr. Gavagni understood it to mean. Ground is not a connection. Ground is potential. The nouns are different. The plain reading hazard doesn't suggest, and this is a plain reading issue, that these two terms are equivalent. You made that assumption because it's in AVX's brief. If you looked at this and said, oh, it's a ground connection. There are really two ways to ground. One is along the periphery and one is not along the periphery. One is along the periphery and that's what our invention disclaims. Column three of the Brunel patent has a disclaimer. It says the noun is future. You say that's not what you are. That's not what we are. I understand that. The other way to ground. But they say the other way is that the ground can be brought to the pen. Now, your ground is brought to the pen from the substrate. Yes. Fine. I think what Judge Hughes was saying was, I was reading the fact that the ground can be brought to the pen, meaning that it's not going to be from the edge. It can be brought to the pen. It isn't exactly saying how, but it can be. And in your case, it's being brought from the substrate. It might also be brought from the next room over if you chose to run the ground all the way out and not go to Shrug Street and take it, you know, next door, right? But a shill would be through the pen. That would be an interpretation of hazard that says that the pen is connected at the tip to a line somewhere else that goes to ground. That would be the interpretation, right? You're saying ground is... But hazard isn't saying how the ground can be brought to the pen. Is it? Hazard does not disclose... It's saying it can be. Your problem is with the last part of that sentence. But an edge ground is preferred, which sounds as though bringing the ground to the pen is an alternative to an edge ground. That's the problem. And that's the way the board interpreted it. That's also not the plain meaning. If you look at the two sentences we just referred to, the second sentence says edge ground, the first sentence says normally terminated. Now, Mr. Houston will admit, because he admitted before the board, that that refers to the edge termination. That's their argument, that edge ground refers to edge termination. But it doesn't say edge termination. Doesn't it normally terminate along the edge because you want to minimize impedance? Yes. Right, that's why it's normally done that way. But if you say I can tolerate some impedance by grounding through the pen, in your case to the substrate, will tolerate the enhanced impedance because of reduced cost. That's true. If you have the ferrule right there slammed up against the feed-through filter, that's how you minimize the impedance. I mean, you wouldn't reduce the cost if your ground ran all the way across the town to someplace else, right? It's not the cost, it's the inductance. If you have a line that extends any substantial length from that pen, you don't have an RF ground. You've got a line with so much inductance that all the RF signal is going to go through the signal lines because it's stopped from going through the ground. But your invention is making a trade-off, right? Enhanced impedance, recognizably likely to happen, but not so much as to really affect the working of the mechanism, and you got an advantage, which was manufacturing simplicity, cost, something like that? No, the advantage is that it works, and without that ferrule on the bottom, it doesn't work. Well, it would have worked if it had been grounded on the edges. What? If it had been grounded on the edge. An edge ground is actually better. Grounding through the edge to the housing, that gives you effectively zero inductance because of the symmetry and structure. That's testimony of the record. Grounding, taking a pen and contacting a line to the pen gives you a tremendous amount of inductance. That won't work for high-frequency EMI filtering. That's the difference. That's not a ground, that's a line running to a pen. Unless there's an edge connection, unless you have an edge connection, the device doesn't work. The exception is if you take a ferrule and you bund it up against the feed-through filter capacitor, and you run the ground lead into that ferrule, effectively running it into the housing. The ferrule is part of the housing that surrounds the device. That was the invention. To be able to do that, to get rid of the edge connection. The whole idea was to get rid of the edge connection. Okay, Mr. Neufeld, we're out of time. We'll give you two minutes for rebuttal. Thank you. Thank you. Mr. Houston. Good morning, Your Honors. May it please the Court. Just picking up on the discussion that you were just having with counsel, Stevenson is very clear that the ground  is the ferrule. I would invite the Court, now or later, to look at Figures 14 and 27 of Stevenson. 14 is the rectangular design. 27 is the circular one. In both of those, the ground is being connected. It's labeled as G2, and it's being connected to the ferrule 30. That's what ground is. And what hazard teaches is the same thing that's in Stevenson, that normally the ground is made by these edge connections, normally terminated along the log edges. The question is whether it teaches bringing the pin down to the ferrule, right? I'm sorry? The question is whether it teaches bringing the pin down to the ferrule. Right. So you're right, Your Honor. So hazard teaches that you can bring ground to the pin, and Stevenson says ground is the ferrule. That is the ground in this case. And in fact, you can look at Figure 26 of Stevenson is one where they've done a cutout of the circular array where you can actually see where a ground pin can go in there in the slot that's marked G1 for the cutout of Figure 26. And we have testimony from our experts, Your Honor, that says, yes, that's exactly how you would do it. You would bring the ground pin right to the ferrule and connect it. That's an easy thing to do. I can cite to Apex 1430 as one example of some of the expert testimony that explains how that's readily doable. The board also cited in its decision at Apex 26 and 27 crossing over on the page, it cited to testimony from Great Batch's own expert, Dr. Stevenson, and he was explaining that, yes, if a person of ordinary skill in the art were asked to bring ground to the pin and connect it to the ferrule, could they do that? He said, yes, that's something a person of ordinary skill in the art knows how to do. So, really, the only issue in our mind, Your Honor, was do you bring the ground, the ferrule to the pin? Well, that somebody could do it doesn't mean that somebody would be motivated to do it. So, fair point, Your Honor. And so the motivations to combine in this case that were identified by the board and were, you know, well, identified by us and relied on by the board were a number of things. Our expert first mentioned that if you use pins for your grounds, that allows you to have multiple redundant pins, multiple redundant grounds. That provides for better grounding and also redundant grounding in case there's a problem with one of the connections. Another motivation that he identified was that you could avoid the use of the external solder connections on the outside of the device. That there'd be some benefit to avoiding that. And we saw evidence of that in the background, the admitted background section of the patent at column three around line 40, where it says the same thing, that it's known in the art that the external solder connections are problematic and things you'd like to avoid. And so that was another motivation that our expert relied on. And by the way, the board cited that motivation at Apex 27. I'm sorry, cited the background section of the patent at Apex 27. And then finally, Your Honor, we would just argue that under KSR, this is just substituting one known element for another, where the function or the performance of it is not unexpected. Is the performance worse? Yes. Hazard tells us it's going to be worse. That you're going to get better RF performance. Well, it's worse in some respects, but better in others. Right. So as far as the filtering performance, hazard tells us that you should expect lower performance. But that's the tradeoff you make. If you want to go with pins and you want to avoid that external solder, that's a tradeoff you can make. And that's consistent, by the way, with the story that our expert, Dr. Primack, told, which said when he was working at AVX, he was approached by somebody that had done exactly this. They had gotten rid of their external connection, they'd used a ground pin, and they said, hey, Mr. Primack, we want to know how much is this, the performance of this device going to degrade? They came to him to ask him that question. They knew that there was going to be performance degradation, and they came to him to ask him how much. And he gave them an estimate and ultimately told them if they wanted exact numbers, they'll have to go measure it and test it. So it's consistent with everything we know in the prior art. It's also consistent with Dr. Galvani also having personal records. He had a personal recollection of a prior art device that removed the ground, the edge ground, and used a pin. So such devices were known. They weren't common. At the time, they weren't prevalent. It wasn't the preferred way. But they were known, and Hazard tells us that. If I could, one other point I'd like to be sure to mention regarding this interpretation of Hazard issue that I think was misunderstood in the reply brief, which is our mootness argument. They seem to be arguing that as best I can understand that Hazard teaches both. It teaches the pin and the edge connection together, bringing ground to both pins and the edge. We and the board think that's wrong. I don't think that's what their argument is. I think their argument is that what Hazard says is you can connect the pin to the edge ground, but that the pin doesn't go all the way through to the ferrule. Well, that would be news to me, Your Honor. I've never heard that argument anywhere that you could connect the pin to the edge ground. Ground in these devices is the ferrule. That is the ground. So when they talk about using the pins for ground, I've never heard a dispute that that meant connecting the pin to the ferrule. And certainly not phrased the way you just put it. They can get back up and speak for themselves. But our understanding all along, and I think the board's understanding,  that Hazard had to be interpreted as including them both together, the pin going to the ground and the edge connection going to ground. And even under that interpretation, they don't win. I mean, that still is disclosing a ground pin going to ground, which is all the claim requires. The claim doesn't exclude the external metalization. It just requires the ground pin. So we just think, to some extent, the issue is moot, and we should prevail under either construction, although we feel very strongly that our interpretation of Hazard and the board's interpretation of Hazard was the correct one. Your Honor, I'm willing to concede the rest of my time unless there are some issues that were raised in the briefing that you have questions about. All right, thank you. Thank you, Mr. Houston. Mr. Neufeld, you have two minutes. Thank you, Your Honor. First, I'd like to address the mootness argument. It's undisputed that an edge ground is preferred. You have an edge ground, and you have a pin that's also connected to the terminals, and that goes through the ferrule. That's great. Why would you connect it to the ferrule if it's already connected to the edge ground? Edge ground's the best ground, so there's really no motivation to do that. You have an edge ground. The whole issue is whether there'd be a motivation to put the pin down to the ferrule, right? Yes. And the question is whether Hazard discloses that. Well, Hazard doesn't talk about the ferrule. That's the issue. Yeah, to frame it clearly, the issue is whether Hazard discloses connecting a pin to a line that's somehow connected to ground instead of an edge connection to ground. It says replacing, or their argument is that there's a motivation. Well, the pin would have to go down to the ferrule to be an alternative, right? No, it can go anywhere to be an alternative. But that's not an EMI filter. Their argument is that Hazard discloses this alternative, and it doesn't. What about the external solder connection issue? If you have a pin that goes somewhere else... No, no, no, but I mean a motivation to combine, a reason for having come up with an invention, according to the patent office and the board. Yes, it's undisputed evidence. It was known that there were problems with external solder connections. Yes, there were problems. And you obviate those if you don't do them. There are known problems with external solder connections, cracking of the... Right, so that's a benefit, a gain for their patent. Yes. In fact, that's what our patent discloses. But that's a reason for Quantus Gill on the argument knew that they could use grounding through the pin. Right? If you know you can ground through the pin, agreed. And they said, we're going to ground through the pin, we're going to avoid problems with the soldering connections on the exterior. Right. But that presupposes an understanding that Hazard teaches the alternative. Our position is Hazard does not teach the alternative. It doesn't say remove the extension... Assuming that Hazard does teach the alternative, then do you agree that the motivation that combined can't be challenged? I agree. Okay, thank you. Okay. Thank you, Mr. Neifeld for your time. The case is submitted. Thank you, counsel.